No. 69,679

KATHERINE OBERZAN, *Appellant,* v. WILLIAM SMITH, M.D.,
*Appellee.*

(869 P.2d 682)

Opinion filed March 4, 1994.

*Timothy A. Short,* of Spigarelli, McLane & Short, of Pittsburg, argued the cause, and *Fred Spigarelli,* of the same firm, was with him on the brief for appellant.

*Thomas M. Sutherland,* of Holbrook, Heaven & Fay, P.A., of Kansas City, argued the cause, and *Janet M. Simpson,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This summary judgment appeal arises from a medical malpractice case. The plaintiff, Katherine Oberzan, alleged her injuries occurred while being prepared for a barium enema. Paula Davis, an x-ray technician employed by Maude Norton Memorial Hospital (the hospital) in Columbus, Kansas, prepared Oberzan for the enema. Davis inserted the enema tip that perforated Oberzan's rectum. The defendant, William Smith, M.D., was not

present when the enema tip was inserted. The trial court granted Smith's motion for summary judgment. Our jurisdiction is under K.S.A. 20-3017 and Rule 8.02 (1993 Kan. Ct. R. Annot. 43). We granted Oberzan's motion for transfer from the Court of Appeals.

Oberzan advances three issues for review. Did the trial court err in concluding that: (1) the x-ray technician was an agent of the hospital and not an agent of Smith; (2) based on K.S.A. 40-3403(h), Smith could not be held vicariously liable for the negligent acts of the x-ray technician (40-3403[h] is a statute abrogating vicarious liability between two health care providers [K.S.A. 40-3401(f)] who are both qualified for coverage under the Health Care Stabilization Fund); and (3) K.A.R. 28-34-86(a) does not provide an independent basis for imposing liability (the administrative regulation concerns supervision of patient services in a recuperation center radiology department)?

We find no error and affirm. We address issues one and three. The health care provider liability abrogation issue need not be reached because Oberzan's contention under issue two relies on Davis being a joint agent of the hospital and of Smith. Oberzan's reliance is misplaced.

## Facts

Oberzan admitted the following facts in response to Smith's summary judgment motion. The trial court found the facts were uncontroverted:

"2. The pretrial questionnaire prepared by the plaintiff alleges that Dr. Smith or his x-ray technician perforated plaintiff's rectum during the barium enema procedure.

"3. The plaintiff was referred to Dr. Smith by Dr. Jones for the barium enema procedure.

"4. The usual procedure for performing barium enemas is that the x-ray technician inserts the enema tip for the barium enema and then gets Dr. Smith to begin the examination. All patients are in the prone position with the tip in place when Dr. Smith walks into the room.

"5. With respect to the plaintiff, when Dr. Smith walked into the room, the plaintiff was already lying in the prone position with the tip already inserted by the technician.

"6. In February, 1988, Paula Davis was employed by Maude Norton Hospital as an x-ray technician.

"7. As an x-ray technician, Paula Davis was trained to prep patients for exams, which would include inserting enema tubes for barium enemas.

"8. Paula Davis inserted the enema tip into the rectum of the plaintiff for the barium enema before Dr. Smith entered the room for the procedure.

"9. After Dr. Smith entered the room, the exam began. Right after Paula Davis began injecting the barium, she noticed bleeding at the tip of the rectum.

"10. After the procedure was halted, Dr. Smith immediately contacted Dr. Jones to inform him of the bleeding."

Oberzan states in her brief, "The x-ray technician perforated the Plaintiff's rectum inserting the nozzle for the barium enema."

## The Trial Court's Ruling

In granting Smith's motion for summary judgment, the trial court reasoned, in part, as follows:

"The uncontroverted facts show that at the time Paula Davis performed the alleged negligent act, she was an employee of Maude Norton Hospital, acting within the scope of her employment with the hospital. Paula Davis was not, at the time in question, an employee or agent of Dr. Smith. Therefore, under common law principles of the doctrine of vicarious liability, Dr. Smith cannot be held liable for the alleged negligence of Paula Davis.

"This Court specifically rejects plaintiff's argument that K.A.R. 28-34-86(a) gives rise to a legal duty on the part of Dr. Smith to supervise the services rendered by Paula Davis in the radiology department of the hospital. At a result, K.A.R. 28-34-86(a) does not provide an independent basis for imposing liability on Dr. Smith for the alleged negligent acts of Paula Davis."

## Standard of Review—Summary Judgment

Our review of the record and of the parties' contentions convinces us that summary judgment was a proper procedural vehicle for resolving the case at bar. See *Fletcher v. Nelson,* 253 Kan. 389, 391, 855 P.2d 940 (1993) (rules relating to summary judgment reviewed). Oberzan does not complain of summary judgment as an improper procedural vehicle. She objects to the trial court's analysis in applying the admitted facts to the law.

## The X-Ray Technician—Agency

Oberzan suggests that the application of the doctrine of respondeat superior is not limited to an employer's liability for actions of employees. She maintains that an employee of a hospital can be the servant of a physician under whose control the employee is working. She believes the physician is vicariously liable

for the employee's negligent conduct. We agree with her broad statement of agency law. However, the facts in the case at bar do not support her claim.

Oberzan applies the "captain of the ship" label to impose vicarious liability on Smith, the physician, for the acts of Davis, the x-ray technician. Oberzan relies upon *Voss v. Bridwell*, 188 Kan. 643, Syl. ¶¶ 3, 5, 364 P.2d 955 (1961) (the surgeon, the anesthetist, and a resident physician were defendants; the alleged injuries resulted from administration of anesthesia); *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736-38, 683 P.2d 1258 (1984) (the doctor, the nurse anesthetist, and the hospital were defendants; the alleged injuries resulted from administration of anesthesia); and *Leiker v. Gafford*, 245 Kan. 325, Syl. ¶ 13, 778 P.2d 823 (1989) (defendants were a certified registered nurse anesthetist who administered the spinal anesthesia, his professional corporation, the obstetrician, his professional corporation, and Abbott Laboratories; the alleged injuries and death resulted from the administration of anesthesia.) Oberzan asserts that a radiologist should be responsible for the medical personnel under his or her control during an invasive radiological procedure. She reasons that the radiologist is similar to a surgeon who is responsible for the conduct of those who assist in a surgical procedure. According to Oberzan, the evidence before the trial court was sufficient to support a finding that Davis was the agent of both Smith and the hospital when she inserted the barium enema tip. No discussion of the alleged evidence supporting an agency relationship with Smith is provided. Oberzan, without specifically referencing the "borrowed servant" doctrine, is asserting that Davis was borrowed from the hospital by Smith.

Smith counters that the uncontroverted facts established that Davis, an employee of the hospital, was acting within the scope of her employment at the time the enema nozzle was inserted. Consequently, he maintains that the facts support the trial court's conclusion that Davis was an agent or servant of the hospital. We agree.

*Voss, McCullough,* and *Leiker* all involved an anesthesiologist or nurse anesthetist and not a hospital employee who provides routine patient services. We observed in *McCullough* that a surgeon generally is not liable for the negligence of an anesthesi-

ologist; however, a surgeon usually is liable for the negligence of an anesthetist-resident or nurse-anesthetist under the "captain of the ship" doctrine. 235 Kan. at 738. The "captain of the ship" doctrine has been applied in the operating room setting. A supervising surgeon is deemed to have control over hospital employees assisting in a surgical procedure. The "captain of the ship" doctrine is not applicable to the case at bar.

The determination of the right of control as a factor used to identify an agency relationship ordinarily is a matter for the trier of fact. *McCullough*, 235 Kan. at 738. Under the rules for summary judgment, however, the party opposing the motion must come forward with something of evidentiary value to support a finding that a question of fact remains. *Glenn v. Fleming*, 247 Kan. 296, Syl. ¶ 1, 799 P.2d 79 (1990). Oberzan has failed to do so in the case at bar.

Davis was not an employee of Smith. She was not under Smith's direct supervision and control at the time Oberzan's injury occurred. Smith did not select Davis to perform the insertion of the enema tip; she was assigned by the hospital. Vicarious liability under respondeat superior does not impose liability on Smith. The master-servant relationship was not established because Smith was not exercising personal control or supervision over Davis, a non-employee, at the time of injury. Oberzan admitted that "[t]he usual procedure for performing barium enemas is that the x-ray technician inserts the enema tip for the barium enema and then gets Dr. Smith to begin the examination." Any negligence of Davis cannot be imputed to Smith.

### Independent Negligence—A Failure to Supervise

Oberzan asserts that Smith may be liable for his own independent negligence in failing to properly supervise the barium enema procedure. She quotes *Leiker*, 245 Kan. 325, Syl. ¶ 13. We reasoned in *Leiker* that, in an appropriate case, a surgeon also may be liable based on K.A.R. 28-34-17(p).

The Kansas Department of Health and Environment has promulgated a variety of regulations that apply to hospitals, ambulatory surgical centers, and recuperation centers. See K.A.R. 28-34-1 *et seq*. Oberzan observes that one of these regulations, K.A.R. 28-34-17(p) (the regulation referenced in *Leiker*), imposes a duty

on a surgeon to supervise the administration of anesthesia when it is not given by another physician. The regulation states: "All anesthetics shall be given by a physician, or shall be given under the supervision of a physician."

Oberzan argues that a similar regulation, K.A.R. 28-34-86(a) ("The radiology department and all patient services rendered therein shall be under the supervision of a designated medical staff physician; wherever possible, this physician shall be attending or consulting radiologist.") imposes a duty on radiologists to supervise patient services rendered in a hospital radiology department. She suggests that the "captain of the ship" doctrine also places a duty on the physician to supervise assistants during surgery or other invasive procedures. According to Oberzan, the breach of the duty to supervise under K.A.R. 28-34-86(a) was direct negligence by the physician, not vicarious liability for the negligence of the non-physician assistant.

The trial court, based on the uncontroverted facts, correctly rejected Oberzan's contention concerning Smith's alleged failure to supervise. The trial court held that K.A.R. 28-34-86(a) did not provide an independent basis for imposing liability for Davis' alleged negligent acts. We note that K.A.R. 28-34-86(a) pertains to recuperation centers and, consequently, is not applicable. K.A.R. 28-34-12(c) applies to hospitals. The language of both regulations is identical.

K.A.R. 28-34-17(p) is specific in providing that all surgical anesthetics shall be given by or under the supervision of a physician. K.A.R. 28-34-12(c) addresses the administration of the radiology department, in general. K.A.R. 28-34-17(c) applies to the administration of the surgery department, in general, stating that "[t]he surgical division of the medical staff shall provide adequate supervision and control over surgery conducted in the hospital." Unlike K.A.R. 28-34-17(p), K.A.R. 28-34-12(c) does not require the radiology staff physician to be physically present, supervising each activity that takes place in the department.

K.A.R. 28-34-17(c) is equivalent to K.A.R. 28-34-12(c). K.A.R. 28-34-12 (j) ("Therapeutic radiation shall be administered to patients only at the direction and under the supervision of a radiologist."); (k) ("Diagnostic and therapeutic use of radioactive isotopes and radium therapy shall conform to applicable state and

federal regulations, and shall be under the supervision of a radiologist or other qualified physician."); (l) ("The interpretation of all radiological examinations shall be made by physicians."); and (p) ("Fluoroscopy shall be conducted by or under the direct supervision of a physician."), are equivalent to K.A.R. 28-34-17(p) in that they provide that certain specific procedures in the radiology department shall be performed by, at the direction of, or under the supervision of a physician or radiologist. None of the K.A.R. 28-34-12 subsections require that the preparation of a patient for a barium enema be performed under a physician's direct supervision. The purpose of K.A.R. 28-34-12(c) is to establish an administrative head for the radiology department.

Oberzan cites no authority in support of her position that K.A.R. 28-34-12(c) creates a legal duty for a designated medical staff physician to personally control and supervise all activities which occur in a radiology department. The construction suggested by Oberzan would create physician liability extending far beyond the intent of the regulation.

Affirmed.